# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH RILEY** | : | Case No.: 22-cv-4390 |
| **2015 CAMBRIA MILL ROAD** | : | |
| **GRANVILLE, OHIO 43023** | : | |
| | : | |
| Plaintiff, | : | Judge:_____ |
| | : | |
| v. | : | |
| | : | |
| **DENISON UNIVERSITY** | : | |
| **C/O/ DAVID A. ENGLISH** | : | |
| **PO BOX F** | : | |
| **GRANVILLE, OH 43023** | : | |

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, Deborah Riley ("Riley"), by and through the undersigned counsel, and for her Complaint against the Defendant, states and avers the following:

## NATURE OF THE ACTION

This is an action for religious discrimination in violation of Title VII of the Civil Rights act as codified in 42 U.S.C.S. § 2000e et seq.  Riley was discriminated against on the basis of her religion for her inability to receive a COVID19 vaccination and Defendant Denison University's failure to accommodate her religious beliefs.

## PARTIES, JURISDICTION, AND VENUE

1. Riley is an American citizen, is over 21 years of age, and is a resident of the city of Granville, county of Licking, state of Ohio.

2. Defendant, Denison University ("Denison") is a large domestic nonprofit corporation with its principal place of business located in Licking County at P.O. Box F, Granville, Ohio 43023.

3. At all times relevant herein, Riley was an employee of Denison and was acting in the course

and scope of her employment.

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2201, and venue is proper under 28 U.S.C. § 1391. The claims arise under Title VII of the Civil Rights Act as codified in 42 U.S.C.S. § 2000e et seq.

5. Riley received Right to Sue Letters from both the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC) and has exhausted her administrative remedies prior to bringing this lawsuit.

## STATEMENT OF FACTS

6. Riley is a former employee of Denison.

7. Riley began working for Denison on or about December 14, 2000, in the position of Administrative Secretary.

8. On or about August 24, 2021, Riley was notified that Denison was mandating she get the COVID-19 vaccine and submit proof of the first dose by September 15, 2021, if she wished to remain employed by Denison.

9. Riley was highly concerned that the vaccine would have a harmful impact on her health and that taking the vaccine did not align with her sincerely held religious beliefs.

10. She was given only three (3) days to fill out the paperwork and get all of the documentation prepared, as applications were due on August 27, 2021, at noon. After learning this news, Riley immediately contacted the Human Resources Department (HR) to inquire about possible exemptions and to get both the nonmedical and medical exemption application forms.

11. HR did not provide Riley with the exemption forms until August 25, 2021, two (2) days before they were due.

12. The medical exemption form required a doctor to sign off on the exemption paperwork.

13. Immediately following her review of the forms, Riley called her physicians' offices seeking a medical exemption. However, Riley's doctors would not sign any paperwork without first seeing Riley for an appointment, and the earliest available appointments were not until November 10, 2021, and December 6, 2021.

14. Riley made appointments with her physicians at the earliest possible dates, which were months out. She explained to Human Resources that it was impossible to fully complete these forms within the time she was given.

15. Riley consulted her supervisor, Joanna Tague, about what her next steps should be given the situation, and Riley was instructed to submit her non-medical exemption form and explain that she intended to submit a medical exemption form as well but was unable to consult a doctor about the vaccine in such a short period of time.

16. Riley submitted her non-medical exemption form on August 27, 202. (Attached hereto as Exhibit A – Riley 8.27.2021 Exemption Form)

17. Riley was given an extension for her medical exemption forms, but it was only until September 30, 2021, which was still not enough time for her to get into see the proper doctors, and her employment was terminated by Denison prior to her scheduled appointments with her physicians, which were necessary to submit a medical exemption request.

18. During the extension period, Riley did extensive research on the vaccine, which confirmed her initial belief that taking the vaccine was in opposition to her sincerely held and longstanding Christian beliefs.

19. Riley dedicated long hours to researching the vaccine and the methods by which it was created. Through this process, she came to learn that aborted fetuses have been used to create the cell lines that assist in developing and testing of the vaccines.

3

20. After discovering this information about the COVID-19 vaccine, Riley submitted an amended non-medical exemption form on September 22, 2021. This form fully outlined her religious beliefs and reasoning for not getting the vaccine and proffered a reasonable accommodation of continuing to "mask at all times while in doors and outside when I cannot safely social distance, as well as submit to weekly COVID testing." (See Exhibit B – Riley 9.22.2021 Exemption Form).

21. Following her amendment, she engaged in multiple conversations with the Denison review panel for vaccine exemptions. During this process Riley had many conversations with the different members of the exemption reviewing board, including Alexis Hanscel, Sarah Gepper, and James Ables.

22. Alexis Hanscel emailed Riley on October 4, 2021, requesting to speak over the phone so she could ask some questions about the request.

23. This was one of the busiest times of the year for Riley (the start of the school) so she requested that Ms. Hanscel email any questions to her so she could respond at her earliest convenience. Ms. Hanscel stated that she did not have specific questions but would like to get some clarification. Riley cooperated, even though she was extremely busy, and called Ms. Hanscel.

24. Hanscel and Riley spoke about what other types of medication that Riley takes and concerns about the vaccine. During the conversation, Ms. Hanscel brushed off Riley's concerns about the use of aborted fetuses in the development of the cell lines used for the vaccine.

25. Then again on October 5, 2021, Ms. Hanscel emailed Riley requesting to talk on the phone on October 6, 2021, about the request.

26. On October 8, 2021, Sarah Gepper left Riley a voicemail saying that they needed to speak as soon as possible about the exemption. However, before Riley can return her call, Ms. Gepper

showed up at Riley's office to ask her questions. The two then had a twenty (20) minute conversation about the exemption wherein Riley repeatedly explained that she objected to the methods used to create the vaccine due to her religious beliefs. She also expressed to Ms. Gepper that she wanted to provide a sincere and thoughtful explanation of her beliefs, but she was on extremely tight deadlines at this time, and she preferred all further questions be through email.

27. Ms. Gepper did not explain any sort of interactive process to Riley.

28. Riley told Ms. Gepper that she felt she was being attacked and harassed and was uncomfortable with how much she was being contacted during her work hours to discuss her request.

29. On October 11, 2021, Sarah Gepper left Riley another voicemail about additional questions and Riley responded through email stating that she would like the review panel to review her September 22, 2021, response as it was carefully written and submitted on her exemption form.

30. If anyone had any questions, Riley requested that they email her, and she would respond on her own behalf.

31. There was extreme hostility directed at Riley during this time about the issue of the vaccine and her exemption applications and Riley felt as though she was being attacked and questioned in a combative manner as this process continued.

32. James Ables questioned Riley's honesty about her being unable to see her doctors on such short notice. This questioning was not limited and seemed constant during this time.

33. In all of the above-mentioned instances, Riley answered the questions that the panel was asking her. There was extensive questioning on the part of the panel, most of which seemed to be repetitive. At no point in time did she indicate she was terminating the interactive process or her exemption request. Riley's last response prior to the denial of her request was that members of the

panel could email her any questions they had, and she would respond.

34. Riley provided an abundance of information for Denison on her exemption request and her beliefs. Denison in turn did not offer accommodation options or attempt to work with Riley to come up with other accommodation options.

35. Riley adamantly denies that she refused to engage in a meaningful interactive process.

36. On October 29, 2021, Riley received an email that her exemption was denied. She responded on November 1, 2021, requesting that the review panel reconsider her request, which was denied as well. Denison made no other effort to offer Riley any other accommodation or work with her to develop one.

37. Because Riley sincerely believed that getting the COVID-19 vaccine was against her religious beliefs, she did not get the vaccine and was officially terminated on November 5, 2021.

38. When an employee is terminated, Denison's policy is to conduct an exit interview with that employee. Id. Riley did not receive said interview.

39. Denison stated that Riley was terminated because she was unwilling to comply with Denison's mandatory vaccination policy, yet they also claimed to Riley that this was not a termination but a voluntary resignation. Riley applied for unemployment following her termination and Denison appealed based on the argument that she was not terminated but voluntarily resigned.

40. The Office of Unemployment found for Riley, declaring that she was in fact terminated and did not voluntarily resign.

40. At the time of termination, Riley had earned two hundred and sixty (260) hours of vacation time, for which she should have received payment.

41. Instead, she only received about two hundred and ten (210) hours of vacation time pay. Denison again claimed that she would not be paid in full because she voluntarily resigned. Id.

42. Denison also did not provide Riley with a Consolidated Omnibus Budget Reconciliation Act Continuation of Health Coverage (COBRA) notice within 30 days of her termination, which Denison is required to do by federal law.

**Count I –Violation of Title VII, 42 U.S.C. § 2000e, et seq. Religious Discrimination- Failure to Accommodate Plaintiff**

43. Riley restates and incorporates herein by reference the preceding paragraphs of her Complaint as if fully set forth herein word for word.

44. Under Title VII of the Civil Rights Act of 1964, employers must accommodate worker's religious practices, as long as they do not cause undue hardship to the employer. Religious practices are not just those required by a church or other religious group but include moral and ethical beliefs as to what is right and wrong that are sincerely held with the strength of traditional religious views. See 29 CFR § 1605.1. Religion is broadly defined under Title VII. The Equal Employment Opportunity Commission's interpretation of religion is "comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching." *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487,491 (3d Cir. 2017)

45. Title VII requires that an employer offer a reasonable accommodation of an employee's sincerely held religious practices and beliefs or demonstrate that it could not do so without incurring undue hardship. 42 U.S.C.§ 2000e (j); *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994); *McGuire v. General Motors,* 956 F.2d 607, 609 (6th Cir. 1992). *Ally v. City of Youngstown,* N.D.Ohio No. 4:09CV1144, 2011 U.S. Dist. LEXIS 166916, at *19 (Aug. 12, 2011)

46. Title VII prohibits Denison from discriminating against employees based on their religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's ...religious

observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "The intent and effect of this definition was to make it an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *TWA v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

47. The employer must carry the burden of proving undue hardship. 42 U.S.C. § 2000e(j); EEOC Religious Accommodation Regulation, 29 C.F.R. § 1605.2(b) and (c)(l).

48. The undue hardship analysis requires an employer to engage in an individualized assessment of each employee's circumstances. This is clear from the statutory language requiring the employer to demonstrate inability to "reasonably accommodate an employee's ... religious observance or practice without undue hardship." 42 U.S.C. § 2000e(j). The reference to "an employee's" makes clear that the undue hardship analysis is to be unique to the employee and to that employee's circumstances. "A mere assumption that many more people, with the same religious practices as the person being accommodated, may also need accommodation is not evidence of undue hardship." EEOC Religious Accommodation Regulation, 29 C.F.R. § 1605.2(c)(1).

49. Undue hardship analysis must start with an analysis of proposed accommodations and Denison did not conduct this analysis. There is nothing which suggests to Plaintiff that the statutorily required individualized assessment of undue hardship was undertaken by Denison. Further, Denison's failure to conduct an individualized assessment demonstrates that the statutory process for determining undue hardship was not followed.

50. "An employer must ... present evidence of undue hardship" and not "rely merely on speculation," See *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085-86 (6th Cir. 1987).

51. An employer violates Title VII if it fails to attempt an accommodation after accommodation is requested. *E.E.O.C. v. Arlington Transit Mix, Inc.*, 957 F.2d 219,222 (6th Cir. 1991) ("[a]fter failing to pursue [a voluntary waiver of seniority rights] or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiffs] religious needs without undue hardship."); E.E.O.C. v. Ithaca Indus., Inc., 849 F.2d 116 (4th Cir. 1988) cert denied 488 U.S. 924 (1988) (same).

52. An employer must demonstrate attempted accommodation before it claims undue hardship as a defense. See, e.g., *Redmond v. GAF Corp.*, 574 F.2d 897, 901-2 (7th Cir. 1978); *Shaffeld v. Northrop Worldwide Aircraft Serv. Inc.*, 373 F. Supp. 937, 944 (M.D. Ala. 1974).

53. Denison did not enter into a meaningful interactive process and just repeatedly questioned Riley when she had given Denison all the information it needed.

54. In May 2021, the EEOC issued guidelines addressing the COVID-19 vaccines and rights and obligations of employers, titled "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws - Technical Assistance Questions and Answers" (hereafter "EEOC COVID-19 Guidance"). The EEOC COVID-19 Guidance provides "examples of reasonable accommodations or modifications that employers may have to provide to employees who do not get vaccinated due to disability; religious beliefs, practices, or observance; or pregnancy." Reasonable accommodations the EEOC has identified as potentially not imposing an undue hardship on the employer include requiring the unvaccinated employee entering the workplace to: wear a face mask, social distance, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or accept a reassignment.

55. In addition, there are other accommodations that are potentially available. For instance, the EEOC has specifically identified testing of employees before they enter the workplace. The EEOC

COVID-19 Guidance states, "an employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or periodically to determine if their presence in the workplace poses a direct threat to others." EEOC COVID-19 Guidance, A.6.

56. Before summarily rejecting Plaintiffs requests for religious exemptions Denison was required to analyze the potential available accommodations.

57. Plaintiff lost substantial wages as a result of Denison not granting her religious exemption.

58. The refusal of religious exemptions led to the employee's termination with associated stress, anxiety, and emotional trauma.

59. Denison's November 5, 2021, termination of Riley's employment due to her religious beliefs and/or its refusal to provide a reasonable accommodation for those beliefs violates Title VII.

**COUNT II – Failure to provide a COBRA notice within 30 days of her termination**

60. Riley restates and incorporates herein by reference the preceding paragraphs of her Complaint as if fully set forth herein word for word.

61. Plaintiff was a participant in Employee Retirement Income Security Act of 1974 (ERISA) health plan and was entitled to receive a Consolidated Omnibus Budget Reconciliation Act Continuation of Health Coverage (COBRA) notice within 30 days of her termination.

62. Denison also did not provide Riley with a COBRA notice.

63. Riley seeks both statutory and equitable damages pursuant to 29 U.S.C. § 1132(c)(1), the COBRA notification enforcement provision, which allows the district court both to assess statutory penalties against the administrator failing to issue timely notice and also to "order such

other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B). *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 588 (7th Cir.2011).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against the Defendant for all just and proper relief including:

(A) Plaintiff seeks a jury trial on all issues so triable;

(B) Plaintiff seeks compensatory damages including lost wages, past and future lost income, physical pain, emotional distress, humiliation. As to lost wages, Plaintiff seeks an order awarding Plaintiff back pay, pre-judgment interest, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights and other violations described above;

(C) Plaintiff seeks, if applicable, reinstatement or alternatively front pay, fringe benefits, and other compensation; and

(D) Plaintiff seeks the costs of this action, including reasonable attorney's fees, and such other legal and equitable relief as this Court deems just and proper, including pre-judgment interest and punitive damages; and

(E) Plaintiffs seek preliminary and permanent injunctive relief and declaratory relief.

(F) Plaintiff seeks equitable damages pursuant to 29 U.S.C. § 1132(c)(1), the COBRA notification enforcement provision.

                         Respectfully submitted,

                         _____/s/ Eric A. Jones_____
                         Eric A. Jones (0081670)
                         Jones Law Group, LLC
                         513 E. Rich Street
                         Columbus, OH 43215
                         (614) 545-9998

ejones@joneslg.com
Attorney for Plaintiffs